IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

PHILLIP CLINE,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )          Civil Action No. 5:11-0870
                                        )
D.J. HARMON, Warden, *et al.*,          )
                                        )
            Defendants.                 )

PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 26.), filed on March 19, 2012; (2) The "Federal Bureau of Prisons' Motion to Dismiss" (Document No. 28.), also filed on March 19, 2012; and (3) Plaintiff's Motion for Summary Judgment (Document No. 34.), filed on April 11, 2012. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the Federal Bureau of Prisons [BOP] and Defendants' Motions and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the BOP and Defendants in moving to dismiss. (Document No. 30.) Plaintiff has filed a Response to the BOP and Defendants' Motions. (Document Nos. 31 - 33, 39 - 40 .) Defendants have filed a Response to Plaintiff's Motion. (Document Nos. 38 and 45.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 26.), grant the BOP's Motion to Dismiss (Document No. 28.), and deny Plaintiff's Motion for Summary Judgment (Document No. 34.).

## PROCEDURAL BACKGROUND

On November 10, 2011, Plaintiff, acting *pro se*[1] and an inmate at FCI Beckley, filed his Complaint in this matter claiming entitlement to relief pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) Plaintiff names the following as Defendants: (1) D.J. Harmon, Acting Warden; (2) Mike Snow, Unit Manager; (3) Mr. Thompson, Medical Director; (4) Dr. Dominic McLain; (5) James Ellis, Nurse Practitioner; and (6) Federal Bureau of Prisons. (<u>Id.</u>, p. 4.) Plaintiff paid the $350.00 filing fee on November 28, 2011. (Document No. 4.)

Plaintiff alleges that Defendants are acting with deliberate indifference in providing medical treatment for his prior "extensive injuries which include a pelvic shear fracture with pelvic tilt, fracture of right pubic rami and separation of sacroiliac joints, chronic lumbosacral strain, decreased sensory function of L5-S1 of right lower extremity, pronounced intervertebral disc syndrome with persistent symptoms compatible with sciatic neuropathy, chronic pain, muscle spasms, and ankle jerk." (Document No. 1, p. 4.) Plaintiff explains that he is a disabled veteran and the sentencing Judge recommended "placement at FMC Lexington, which is a federal medical center so that Cline may receive proper care and treatment." (<u>Id.</u>, p. 5.) Plaintiff alleges that he "has for 10 years tried to be transferred to a medical center so that he may receive the proper care and treatment." (<u>Id.</u>) Plaintiff complains that FCI Beckley is unable to provide "pain medication strong enough to adequately address his pain to a manageable level so that he might also engage in some sort of therapy which would slow deterioration." (<u>Id.</u>) Plaintiff acknowledges that Dr. Dominic McLain

---

[1]   Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

"prescribed Neurontin and Motrin to help ease the pain and told plaintiff that there were 12 inmates ahead of him awaiting transfer to a Medical Center for treatment." (Id., p. 6.) Plaintiff contends that Nurse Practitioner James Ellis and Dr. McLain "are both fully aware that FCI-Beckley is not equipped or staffed to treat Plaintiff's serious medical needs." (Id.) Plaintiff further states that "[b]oth NP Ellis and Dr. McLain show deliberate indifference to plaintiff's serious medical needs by failing to provide the level of medical treatment consistent to the extent of injuries, and pain and suffering experienced by plaintiff." (Id.) Plaintiff claims that "due to these inactions to the plaintiff's known serious medical needs, his condition continues to deteriorate and worsen the longer plaintiff stays at FCI-Beckley without adequate medical care." (Id.) Plaintiff asserts that Medical Director Thompson is acting with deliberate indifference "by refusing to order the proper and effective treatment for Mr. Cline's serious medical problems when he knows that Mr. Cline suffers from chronic agonizing pain and should be at a medical center, and that his subordinates Ellis and McLain have refused to properly treat." (Id., p. 10.)

Plaintiff alleges that Mike Snow "deliberately interfered with treatment when he took it upon himself to have a medical pass for 'chair-in-cell' to be revoked." (Id., p. 7.) Plaintiff explains that the "chair-in-cell" was necessary "to facilitate access to his locker due to extreme pain and immobility associated with his serious medical condition." (Id.) Plaintiff asserts that "Mr. Snow intentionally, willfully, and wantonly elected to personally interfere with Cline's medical treatment by exerting undue influence over N.P. Ellis and usurping Ellis of his medical authority to issue medical permits for treatment as he sees fit and necessary for the welfare of inmates." (Id., p. 9.) Plaintiff contends that Warden Harmon is acting with deliberate indifference "by failing to adequately address the issues of denial or interference by Mr. Snow of legitimate medical treatment

to Mr. Cline's serious medical problems." (Id., p. 11.) Plaintiff requests monetary and injunctive

relief. (Id., p. 13.)

By Order entered on January 6, 2012, the undersigned directed the Clerk to "issue process

in this case by preparing and serving a Summons and a copy of Plaintiff's Complaint upon the

Defendants as specified in Rule 4(i)(1) - (3) of the Federal Rules of Civil Procedure." (Document

No. 8.)

On January 20, 2012, Plaintiff filed a "Motion for Preliminary Injunction and Temporary

Restraining Order." (Document No. 17.) In support of his Motion, Plaintiff stated as follows:

> The plaintiff will continue to be inflicted with cruel and unusual punishment unless
> this court issues a preliminary injunction and temporary restraining order because the
> defendant has, is, and will continue to inflict continuous pain and suffering upon the
> plaintiff as they show deliberate indifference to plaintiff's serious medical issues.
> The plaintiff is in need of adequate and effective treatment for his serious medical
> needs NOW, instead of waiting for the normal course of court proceedings which
> may possibly take years for the final determination. The plaintiff needs to be
> transferred to a Federal Medical Center (FMC) that is staffed and equipped to
> adequately and effectively treat the plaintiff's serious medical issues.

(Id.) By Proposed Findings and Recommendation entered on January 24, 2012, the undersigned

recommended that Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order

be denied. (Document No. 18.) Plaintiff filed his Objections on January 31, 2012. (Document No.

19.) By Memorandum Opinion and Order entered on March 2, 2012, United States District Judge

Irene C. Berger adopted the undersigned's recommendation and denied Plaintiff's Motion.

(Document No. 21.)

On March 19, 2012, Defendants filed their "Motion to Dismiss, or in the Alternative, Motion

for Summary Judgment" and Memorandum in Support. (Document Nos. 26 and 27.) Defendants

contend that Plaintiff's Complaint should be dismissed based upon the following: (1) "Plaintiff

cannot establish a claim for deliberate indifference to his medical condition" (Document No. 27, pp. 7 - 12.); (2) "Revocation of Plaintiff's 'chair pass' did not violate his constitutional rights" (Id., pp. 12 - 14.); (3) "Supervisory liability is inapplicable in a Bivens Action" (Id., pp. 14 - 16.); (4) "Defendants Harmon and Thompson must be dismissed due to Plaintiff's lack of specificity" (Id., p. 16.); (5) "The Defendants are entitled to Qualified Immunity" (Id., pp. 17 - 19.); and (6) "Defendant Ellis should be dismissed for insufficient service of process" (Id., pp. 19 - 20.)

In support, Defendants filed the following Exhibits: (1) The Declaration of Sarah Lilly (Document No. 26-1, pp. 1 - 2.); (2) A copy of an "Order of Dismissal" from the West Virginia Board of Osteopathy (Id., pp. 3 - 9.); (3)  The Declaration of Dominick McLain, D.O. (Document No. 26-2, pp. 1 - 6.); (4) A copy of Plaintiff's medical records (Id., pp. 12 - 74, Document No. 26-3, Document No. 26-4, pp. 1 - 80.); (5) A copy of a Memo dated March 2, 2012, regarding the denial of transfer (Document No. 26-4, p. 82.); (6) The Declaration of James R. Ellis, Jr. (Document No. 26-5.); (7) The Declaration of Michael Snow (Document No. 26-6.); (8) The Declaration of Kevin Thompson (Document No. 26-7.); and (6) The Declaration of D.J. Harmon (Document No. 26-7.)

Also on March 19, 2012, the BOP filed a Motion to Dismiss and Memorandum in Support. (Document Nos. 28 and 29.) The BOP contends that "[t]here is no Bivens action against the Federal Bureau of Prisons ("United States") or its employees in their official capacity." (Id.)

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on March 20, 2012, advising him of the right to file a response to the Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 26.) and the BOP's Motion to Dismiss (Document No. 28.). (Document No. 33.)

On April 11, 2012, Plaintiff filed his Response to Defendant's "Motion to Dismiss, or in the

Alternative, Motion for Summary Judgment." (Document No. 31.) First, Plaintiff argues that Defendants "admit to giving plaintiff a pain reliever but not one that would adequately and effectively relieve plaintiff's extreme level of pain (of which they claim BOP policy prevents them from doing)." (Id., p. 1.) Plaintiff states that Defendant have denied a "pain reliever strong enough to provide relief to plaintiff's extreme pain because it is not authorized by a care level II facility, but then refuse to put in for re-designation to a care level III facility where plaintiff may receive the appropriate level of care to adequately and effectively treat his serious medical condition." (Id.) Plaintiff argues that "prison officials' deliberate indifference to plaintiff's chronic pain amounts to physical torture by forcing plaintiff to submit to such chronic pain which is the root cause of the expeditious degenerative condition, muscle atrophy, and loss of range of motion that they have also led to other compounded medical health care problems such as obesity, hypertension, fatigue, and weakened immune system." (Id., p. 2.)

Second, Plaintiff claims that "defendants Thompson, McLain, and Ellis admitted in their declarations to continuing a course of treatment that they knew to be ineffective and inadequate, and they also quote policy which limits their ability to treat adequately and effectively, and by the fact that their refusal to apply for re-designation to a facility that could treat effectively infers an intention to inflict pain and suffering upon the plaintiff." (Id.) Plaintiff argues that Defendants Thompson, McLain, and Ellis have "explicit knowledge of risk of serious harm arising out of prisoner's serious medical needs . . . and to continue the same course of treatment which defendants knew would not adequately and effectively treat plaintiff's serious medical needs prove that the defendants deliberately disregarded that risk of serious harm to Plaintiff's serious medical needs without adequate and effective treatment." (Id., pp. 2 - 3.)

6

Third, Plaintiff asserts that "Dr. Greenburg (Neurosurgeon Specialist) recommended that plaintiff be redesignated to a care level III where he may receive the proper level of care." (Id., p. 3.) Thus, Plaintiff contends that Dr. Greenburg "recognized that plaintiff has not, and cannot, receive the level of care at FCI-Beckley that he needs." (Id.) Plaintiff complains that "McLain tries to cover-up his denial of the Neurosurgeon's recommendation by stating that plaintiff had admitted to him that he had asked the Neurosurgeon to place the care level III in the report which is completely fabricated LIE as disputed in Plaintiff's Affidavit." (Id.)

Fourth, Plaintiff argues that "Mr. Snow's intentional interference with the prescribed 'Chair Pass' after Mr. Ellis had provided the 'Chair Pass' to help facilitate access to the locker amounts to deliberate indifference." (Id., p. 4.) Plaintiff claims that Mr. Snow improperly reported that the chair was being misused because "how would Snow know whether or not it was being misused since he's not a medical care provider." (Id.) Since Defendants Thompson and Ellis revoked the "Chair Pass" pass based upon Defendant Snow's report, Plaintiff contends that all three defendants acted with deliberate indifference. (Id.)

Fifth, Plaintiff contends that "supervisory liability does not apply because the supervisor directly participated." (Id., p. 5.) Plaintiff asserts that "the supervisor learned of the violation of plaintiff's rights and failed to do anything to fix the situation." (Id.) Plaintiff also stated that "the supervisor was grossly negligent in managing the people he was supposed to supervise." (Id.) Plaintiff explains that "D.J. Harmon was acting warden at the time in question when the issues of deliberate indifference to serious medical needs was first raised in the administrative remedy procedures." (Id.) Finally, Plaintiff states that defendants are not entitled to qualified immunity because "defendants have violated a clearly established right." (Id.) In support, Plaintiff attaches a

7

copy of his Affidavit. (Document No. 32.)

Also on April 11, 2012, Plaintiff filed his Response to the BOP's Motion to Dismiss. (Document No. 33.) Plaintiff argues that he "is bringing this civil suit, 42 U.S.C. § 1983, against the BOP for an injunctive and a declaratory judgment, not monetary judgment, therefore, it should not be dismissed from the complaint and included as proper." (<u>Id.</u>)

Plaintiff also filed a Motion for Summary Judgment on April 11, 2012. (Document No. 34.) In his Motion, Plaintiff states that "for the reasons stated in the Plaintiff's responses to Defendants' Motions, and the reasons stated in all Plaintiff's Affidavits submitted as Exhibits, the Plaintiff requests that the Defendants' Motion to Dismiss/Motion for Summary Judgment be denied and the Plaintiff respectfully requests that Plaintiff's Motion for Summary Judgment be granted in whole or in part and the remaining issues deemed still in dispute to be heard before the jury." (<u>Id.</u>)

On April 13, 2012, the BOP filed its Reply. (Document No. 35.) First, the BOP states that "Plaintiff now claims that he is not seeking monetary damages against the BOP, notwithstanding his complaint seeks $10 million in compensatory damages and $500 million in punitive damages. This judicial admission now precludes any monetary relief against the BOP." (<u>Id.</u>) Second, the BOP notes that "Plaintiff's request for injunctive relief was denied" and "[a]ll that remains is the <u>Bivens</u> action which provides only for damages." (<u>Id.</u>) Therefore, the BOP argues that "Plaintiff does not have a <u>Bivens</u> action against the BOP." (<u>Id.</u>)

On April 16, 2012, the Defendants filed their Reply. (Document No. 37.) First, Defendants argue that "[t]he affidavits referenced by plaintiff in his response are inadmissible and should be stricken." (<u>Id.</u>) In the alternative, Defendants state that "the affidavit of plaintiff disagrees with the medical treatment by Dr. McLain and Mr. Ellis," and the "[d]ifferences of medical opinion is legally

insufficient to support plaintiff's <u>Bivens</u> claims." (<u>Id.</u>, p. 1.) Defendants assert that "Plaintiff's affidavit clearly establishes that he has been regularly cared for by Dr. McLain and Mr. Ellis; plaintiff just disagrees with their treatment." (<u>Id.</u>, p. 2.) Defendants further contend that "plaintiff's affidavit does not support any claim against Mr. Snow as plaintiff's affidavit is hearsay, argumentative, and conclusory." (<u>Id.</u>) Defendants explain that "Mr. Ellis' declaration makes clear that he made the determination that a chair pass was not medically needed by plaintiff." (<u>Id.</u>) Defendants argue that "plaintiff's affidavit fails to support any claim against Mr. Thompson, who like Mr. Snow, relied on Mr. Ellis to determine the medical need for the chair pass. Mr. Thompson had no personal involvement in plaintiff's medical care." (<u>Id.</u>) Finally, Defendants allege that "Plaintiff's affidavit allegations against Warden Harmon fail to establish any personal involvement with his medical care. Plaintiff admits that Warden Harmon's only involvement was reviewing plaintiff's administrative remedies, which as a matter of law is insufficient." (<u>Id.</u>)

Also on April 16, 2012, Defendants filed a Response to Plaintiff's Motion for Summary Judgment. (Document No. 38.) Defendants argue that Plaintiff's Motion should be denied based on the following: (1) "The motion should be denied because plaintiff failed to submit a memorandum;" (2) "The defendants incorporate herein their previously filed motion to strike affidavits;" and (3) "The defendants incorporate herein their motion to dismiss or in the alternative for summary judgment." (<u>Id.</u>)

On April 19, 2012, Plaintiff filed his Corrected Response to the BOP's Motion to Dismiss. (Document No. 39.) Plaintiff argues that he "is bringing this civil suit, 42 U.S.C. § 1983, against the BOP for an injunctive and a declaratory judgment, *not only monetary judgment*, therefore, it should not be dismissed from the complaint and included as proper." (<u>Id.</u>, emphasis added) Also on April

9

19, 2012, Plaintiff filed a "Supplemental Response to Defendants' Motion to Dismissal Federal Bureau of Prisons." (Document No. 40.) First, Plaintiff argues that the BOP improperly "bases its whole argument on the typographical error contained in plaintiff's Response to Defendants' Motion to Dismiss the Federal Bureau of Prisons dated 4-9-2012 wherein on #4 it mistakenly states, 'not monetary judgment'" instead of correctly stating "not only monetary judgment." (Id., p. 1.) Second, Plaintiff argues that his request for injunctive relief was not denied. (Id.) Plaintiff explains that "what was denied was the plaintiff's petition for preliminary injunction, not injunction." (Id.)

On April 26, 2012, Plaintiff filed a "Reply to Defendants' Response to Plaintiff's Motion for Summary Judgment." (Document No. 43.) Plaintiff states that he is acting *pro se* and "was not aware that he had to submit a separate memorandum of law" in support of his Motion for Summary Judgment. (Id.) Plaintiff, therefore, "supplants his response as memorandum of law in support of his motion for summary judgment." (Id.) Plaintiff also states that the incorporates "his previously filed 'Response to Defendants' Motion to Strike Affidavits'" and "his 'Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment.'" (Id.)

On April 27, 2012, Defendants' filed their "Corrected Response to Plaintiff's Motion for Summary Judgment." (Document No. 45.) Defendants argue that Plaintiff's Motion should be denied based on the following: (1) "The motion should be denied because plaintiff failed to submit a memorandum;" (2) "The defendants incorporate herein their previously filed motion to strike affidavits;" and (3) "The defendants incorporate herein their motion to dismiss or in the alternative for summary judgment." (Id.)

**FACTUAL HISTORY**

In March 2009, Plaintiff was transferred from FCI Manchester, Kentucky, to FCI Beckley,

West Virginia. Plaintiff's transfer paperwork noted that Plaintiff had a history of noncompliance with medical treatment, degenerative changes in the lumbosacral region, and benign essential hypertension. (Document No. 26-2, pp. 62 - 63.) Plaintiff medications included Atenolol, Hydrochlorothiazide, and Piroxicam. (Id.) An Intake Health Screening was conducted on March 30, 2009, where it was noted that Plaintiff had adult onset hypertension and chronic back pain secondary to a motor vehicle accident in 1991. (Id., pp. 58 - 61.) Plaintiff's medications were renewed and he was instructed on "how to obtain medical, dental, and mental health care." (Id., p. 61.) Additionally, Plaintiff was given a lower bunk pass because of his previous back and pelvic injuries. (Id.)

By Administrative Note entered on February 5, 2009, Lab Tech Janet Hagan noted that Plaintiff was a "no show for hospital labs." (Id., p. 57.) On April 7, 2009, Plaintiff was evaluated by Dr. Dominick McLain during a Chronic Care Visit. (Id., pp. 53 - 56.) Plaintiff stated that "nonsteroidals do not help his pain much" and "I was sent here for pain control." (Id., p. 53.) Dr. McLain noted that Plaintiff's "pelvic x-rays showed asymmetry of the symphysis public by 1.5 cm. Lumbar spine showed degenerative changes. No new problems admitted to." (Id.) Plaintiff informed Dr. McLain that Ibuprofen worked better at relieving his pain. (Id., p. 54.) Dr. McLain ordered Ibuprofen and discontinued the Piroxicam. (Id., p. 55.) Dr. McLain renewed the Atenolol and Hydrocholorothiazide for treatment of Plaintiff's hypertention. (Id.) Dr. McLain also ordered several labs. (Id.)

On July 22, 2009, Plaintiff was evaluated by Physician Assistant Hank Shrewsbury during a Chronic Care Visit. (Id., pp. 48 - 50.) PA Shrewsbury noted that Plaintiff had a "history of lumbago from an old injury in motor vehicle accident. He states that he takes the medication motrin for back pain and that blood pressure is okay on meds. No new complaints." (Id., p. 48.) PA

11

Shrewsbury refilled Plaintiff's medications. (Id., p. 50.)

On August 24, 2009, Plaintiff reported to sick call complaining of "ongoing back pain and weakness in right leg." (Id., pp. 45 - 47.) Plaintiff stated that he "stopped trazodone because it did not help." (Id.) Plaintiff was examined by Nurse Practitioner James Ellis, who noted that Plaintiff had a favoring gait. (Id., p. 46.) Nurse Practitioner Ellis ordered Doxepin for pain, issued Plaintiff a medical idle until the end of September, and ordered a cane with a cane pass. (Id.)

On September 22, 2009, Plaintiff reported to sick call complaining of "pain in lower back and right leg" and "reports pill line mediation and NSAID is not helping at all." (Id., p. 42.) Plaintiff was evaluated by Nurse Practitioner Ellis, who noted that Plaintiff requested "to be placed on narcotic medication to treat his pain or he will consider it torture 'because of policy'"and "he will contact his State Senator if we do not treat his pain as requested." (Id.) Plaintiff's x-rays and MRIs were reviewed, which revealed a history of pelvic fracture, degenerative changes in the back and some disc bulging, and degenerative changes in the right and left hip. (Id.) On examination, Plaintiff's straight leg raise was positive on the right. (Id., p. 43.) Nurse Practitioner Ellis noted that Plaintiff refused to perform a range of motion test for his lumbar spine because "he reports too much pain to bend forward even 10 degrees." (Id.) Nurse Practitioner Ellis indicated that "inmate can sit normally upright in a chair and on the exam table with hips and LS flexed at 90 degrees. Subjective presentation does not accurately represent severity of objective finding on current physical exam and previous radiological studies as noted above." (Id.) Nurse Practitioner Ellis increased the Doxepin dosage to 100 mg orally at bedtime and denied his request for transfer. (Id., p. 44.)

On October 6, 2009, Plaintiff was evaluated by Dr. McLain at the Chronic Care Clinic. (Id., pp. 38 - 41.) Plaintiff reported that his low back pain and pelvic pain "is slightly improved with

Ibuprofen three times per day" and "requested something be added to the Ibuprofen to assist with his pain." (Id., p. 38.) Dr. McLain continued Plaintiff's prescription for Doxepin and added Valproic Acid capsules 500 mg every evening at pill line for treatment of pain. (Id., p. 40.)

By Administrative Note entered on November 12, 2009, Nurse Practitioner Ellis noted that Plaintiff reported that the Valproic Acid and Doxepin were not helping his pain and Plaintiff requested "to switch to Neurontin." (Id., p. 34.) Nurse Practitioner Ellis indicated that he would defer the request to a physician. (Id.)

On December 8, 2009, Plaintiff reported to sick call requesting that his pain medication be changed to Neurontin. (Id., p. 30.) Plaintiff stated that his back pain was severe and he was only getting minimal relief with current medication. (Id.) Plaintiff admitted "to taking Motrin 800 mg (all three pills) in the morning at the same time just 'to get going.'" (Id.) Nurse Practitioner Ellis examined Plaintiff, noting tenderness, decreased range of motion, and straight leg raise caused back pain. (Id., p. 31.) There was no radiculopathy, atrophy or neurological deficits on examination, and the pain was subjectively described in the back only. (Id., p. 32.) Nurse Practitioner Ellis denied Plaintiff's request for Neurontin and continued the same medications on the same dosages. (Id.) Nurse Practitioner Ellis noted that a chair in the cell would be allowed to facilitate access to Plaintiff's locker since he was complaining of pain while bending. (Id.) Nurse Practitioner Ellis added the restriction of no prolonged standing and no bending at the waist to Plaintiff's Medical Duty Status. (Id.)

On January 5, 2010, Plaintiff was evaluated by Nurse Practitioner Ellis at the Chronic Care Clinic. (Document No. 26-3, p. 67.) Plaintiff complained of right knee pain and chronic hip and lower back pain. (Id.) Plaintiff requested an increase in the Valproic Acid medication. (Id.) Nurse

Practitioner Ellis granted Plaintiff's request and increased the Valproic Acid to 1000 mg at bedtime on pill line. (Id., p. 70.) Nurse Practitioner Ellis also requested an x-ray of Plaintiff's right knee, which was conducted on January 13, 2010. (Id., p. 71.)

On April 1, 2010, Plaintiff was evaluated by Dr. McLain at the Chronic Care Clinic.  (Id., pp. 63 - 66.) Plaintiff complained of chronic low back pain with shooting pain down the right leg and reported little to no relief with current pain medications. (Id., p. 63.) Plaintiff further stated that "he thinks he has Hepatitis C." (Id.) Although Plaintiff's Hepatitis C tests returned nonreactive, Dr. McLain ordered a Hepatitis C Viral Load. (Id., p. 64.) Dr. McLain prescribed Gabapentin (Neurontin) for pain and continued his prescription for the Ibuprofen and Doxepin. (Id., p. 65.)

By Administrative Note entered on April 15, 2010, Nurse Practitioner Ellis noted that Plaintiff reported that the Neurontin was "not effective after 2 weeks." (Id., p. 61.) Plaintiff again requested transfer to a medical facility. (Id.) Nurse Practitioner Ellis noted that he discussed the matter with Dr. McLain, who recommended that Plaintiff continue current treatment. (Id.) Nurse Practitioner Ellis explained to Plaintiff that "it may take longer than 2 weeks for him to experience the full effectiveness of the medication." (Id.) Nurse Practitioner Ellis further recommended weight loss and exercise as tolerated, but Plaintiff disagreed with the recommendation and left the office in protest." (Id.)

By Administrative Note entered on May 25, 2010, Nurse Practitioner Ellis noted he revoked Plaintiff's "chair pass" due to Plaintiff's misuse of the authorized medical equipment. (Id., p. 60.) Specifically, Nurse Practitioner Ellis noted that the "chair pass" was given to facilitate access to his locker, but unit team members reported that Plaintiff was using his cell chair to read books and lounge. (Id.)

14

On June 22, 2010, Plaintiff was examined by Nurse Practitioner Ellis at the Chronic Care Clinic. (Id., pp. 54 - 59.) Plaintiff reported "minimal relief from Neurontin" and "increased symptoms of pain and weakness in right leg." (Id., p. 54.) Plaintiff again requested transfer to a medical facility. (Id.) Nurse Practitioner Ellis noted some muscle atrophy in Plaintiff's right leg. (Id., p. 56.) Nurse Practitioner Ellis ordered an MRI of the lumbosacral spine due to the findings on the physical exam and ineffectiveness of attempted treatment. (Id., p. 58.)

On September 21, 2010, Plaintiff was examined by Dr. McLain at the Chronic Care Clinic. (Id., pp. 50 - 53.) Plaintiff continued to complain of chronic low back pain and weakness in the right leg. (Id., p. 50.) Dr. McLain noted that Plaintiff's MRI was scheduled for the next day. (Id.) Dr. McLain indicated that Plaintiff had "some mild weakness of the right leg" and "no obvious muscular atrophy when examining both legs." (Id., p. 51.) Dr. McLain noted that a plan of care will be determined "after his MRI is done and the results obtained." (Id., p. 52.) On September 22, 2010, Plaintiff was transported to an outside hospital for the MRI but the MRI could not be conducted due to Plaintiff's size. (Id., p. 47.) Plaintiff explained that "I wouldn't fit in the machine, they put me in and my shoulders hit the sides and the machine stopped." (Id.) The MRI was rescheduled and performed on October 6, 2010. (Id., pp. 44 - 45.)

On December 13, 2010, Plaintiff was evaluated by Nurse Practitioner Ellis at the Chronic Care Clinic. (Id., pp. 38 - 43.) Plaintiff reported increased pain in the lower back. (Id., p. 38.) Plaintiff complained that "current meds are only minimally effective" and requested transfer to a medical center. (Id.) Nurse Practitioner Ellis note that Plaintiff's had gained weight due to lack of exercise.  (Id.) The MRI revealed no acute fracture to lumbar spine or thoracic spine, multiple level degenerative changes of the discs, discs bulging at L3-5 and L4-5, no herniated disc or masses, no

evidence of acquired spinal canal stenosis, and minimal facet arthropathy on the left side at L4-5. (Id., p. 39.) Plaintiff's medications were renewed. (Document No. 26-3, p. 41 and Document No. 26-4, pp. 43 - 45.) Nurse Practitioner Ellis submitted a consultation request for an evaluation and treatment by a neurosurgeon regarding the chronic low back pain. (Document No. 26-3, p. 41 and Document No. 26-4, p. 42.)

By Administrative Note entered on December 24, 2010, Physician Assistant David Hutchison noted that Plaintiff had missed the morning pill line on six of the previous eleven days and "per policy . . . will be discontinued from AM pill line" for Neurontin. (Document No. 26-3, pp. 36 - 37.) It was noted that Plaintiff would continue to receive a 800 mg dose of Neurontin on the PM pill line. (Id.)

By letter dated January 4, 2011, Dr. McLain notified Plaintiff that the Utilization Review Committee [URC] had approved the request for a neurosurgery evaluation consult and it would be scheduled accordingly. (Document No. 26-4, p. 66.) On May 13, 2011, Plaintiff was evaluated by Dr. Jeffrey Greenberg, a neurosurgeon. (Id., p. 67.) Dr. Greenberg recommended that Plaintiff undergo a lumbar facet injection. (Id.) On June 7, 2011, the URC approved Plaintiff for a lumbar facet injection by the neurosurgeon. (Id., p. 68.) Plaintiff underwent a set of injections in his L4/S1 and L5/S1 on September 29, 2011. (Id., p. 69.)

On October 31, 2011, Plaintiff was evaluated by Nurse Practitioner Ellis for a follow-up appointment. (Id., pp. 70 - 71.) Plaintiff reported that "he did not receive any relief from the pain injection in his back" and requested "to be transferred to another facility that has the ability to prescribe long-term chronic narcotics." (Id., p. 70.) Plaintiff stated that he was gaining weight due to his inability to exercise. (Id.) Nurse Practitioner Ellis requested a follow-up visit with Dr.

Greenberg "for management recommendations as injection did not provide relief." (Id., pp. 71 and 73.)

On November 2, 2011, the URC approved the neurosurgical consult. (Id., p. 74.) Plaintiff had a follow-up appointment with Dr. Greenberg on February 8, 2012. (Id., p. 75.) Upon evaluation, Dr. Greenberg noted that Plaintiff was "intact neurologically," "range of motion of the lumbar spine is markedly decreased in all planes," and "straight-leg raising seems to be dramatically positive bilaterally." (Id.) Dr. Greenberg recommended that Plaintiff "go to a care level #3" stating that "perhaps that might be of benefit. There is nothing surgical that we can offer." (Id.) By Administrative Note entered on March 9, 2012, Dr. McLain noted he had received Dr. Greenberg's report, but "the outside neurosurgeon does not understand out care level system. During the last clinic visit, the patient stated to me he had requested the neurosurgeon to place that in his report hoping this would cause him to be transferred from this institution." (Id., p. 76.)

On February 17, 2012, Plaintiff was evaluated by Dr. McLain at the Chronic Care Clinic. (Id., pp. 77 - 80.) Plaintiff continued to complain of chronic low back pain. (Id., p. 77.) Plaintiff reported that Neurontin "helps very little" and that the facet injections did not help. (Id.) Plaintiff requested narcotics and muscle relaxants. (Id.) Dr. McLain increased his prescription for Neurontin. (Id., p. 79.)

On February 28, 2012, FCI Beckley requested Plaintiff's transfer to a Medical Referral Center. (Id., p. 82.) By Memo dated March 2, 2012, Cheryl Owens, Designator Office of Medical Designations and Transportation, notified FCI Beckley that the request was "denied at this time per Dr. Allen, Chief Health Programs, Health Services Division." (Id.) FCI Beckley was instructed to "continue local management of condition." (Id.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106

18

S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting

19

a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law.[2]

1.      **BOP's Motion to Dismiss:**

In its Motion, the BOP argues that Plaintiff's <u>Bivens</u> action should be dismissed for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction. (Document No. 28.) The BOP explains that the law does not provide for a <u>Bivens</u> remedy against the BOP or its employees in their official capacities. (<u>Id.</u>) In Response, Plaintiff argues that he "is bringing this civil suit, 42 U.S.C. § 1983, against the BOP for an injunctive and a declaratory judgment, not only monetary judgment, therefore, it should not be dismissed from the complaint and included as proper." (Document Nos. 33 and 39.)

A <u>Bivens</u> action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. <u>See</u> <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388, 395 -97, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); <u>See also</u> <u>Carlson v. Green</u>, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending <u>Bivens</u> to

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

Eighth Amendment claims); <u>Davis v. Passman</u>, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18,

60 L.Ed.2d 846 (1979)(extending <u>Bivens</u> to allow citizen's recovery of damages resulting from a

federal agent's violation of the Due Process Clause of the Fifth Amendment.) A <u>Bivens</u> action is the

federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be

brought against federal agents acting under the color of their authority for injuries caused by their

unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury

is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the

violation of a valid constitutional right by a person acting under color of federal law. The United

States Supreme Court has held that an inmate may name a federal officer in an individual capacity

as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u>

<u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed. 2d 171 (1991). However, <u>Bivens</u> claims

are not actionable against the United States, federal agencies, or public officials acting in their

official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308

(1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reingold v. Evers</u>, 187 F.3d 348, 355

n. 7 (4th Cir. 1999).

    Based upon the foregoing, the undersigned finds that Plaintiff's <u>Bivens</u> action against the

BOP and its employees in their official capacities should be dismissed. In his Complaint, Plaintiff

names the BOP as a Defendant. (Document No. 1.) Federal inmates may file claims of personal

liability against individual prison officials for violations of their constitutional and civil rights

pursuant to <u>Bivens</u>, but may not assert claims against the government or prison officials in their

official capacities. The BOP is not a  "person" as required by <u>Bivens</u>. As stated above, federal

agencies are not proper defendants under <u>Bivens</u>. Furthermore, <u>Bivens</u> claims are not actionable

against defendants acting in their official capacities. <u>See</u> <u>Meyer</u>, 510 U.S. at 485; <u>also see</u> <u>Doe v. Chao</u>, 306 F.3d 170 (4th Cir. 2002)( "[A] *Bivens* action does not lie against either agencies or officials in their official capacities"). Accordingly, the Court recommends that the BOP's Motion to Dismiss (Document No. 28) be granted.

## 2. Eighth Amendment Claim.

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." <u>Wolfish v. Levi</u>, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, <u>Bell v. Wolfish</u>, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). <u>See also</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), <u>quoting</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a

prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's

necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct.

2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove

two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,'

and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v.

Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.

1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*,

we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be

'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A

medical need serious enough to give rise to an Eighth Amendment claim involves a condition which

places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or

a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the

applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference
> to a serious medical need, the treatment must be so grossly incompetent, inadequate
> or excessive as to shock the conscience or to be intolerable to fundamental fairness.
> * * * Deliberate indifference may be demonstrated by either actual intent or reckless
> disregard. * * * A defendant acts recklessly by disregarding a substantial risk of
> danger that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position. * * * Nevertheless, mere negligence
> or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were

aware that inmate's condition had worsened and was life-threatening and intentionally ignored the

situation and refused to seek medical assistance provided a reasonable basis for finding deliberate

indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert.

denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay

in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, supra, 511 U.S. at 837, 114 S.Ct. at 1979. It is well established that a private physician under contract with a State to provide medical services to inmates acts under color of State law when treating them and may therefore be held liable under Section 1983. See West v. Atkins, 487 U.S. 42, 54, 108 S.Ct. 2250, 2257, 101 L.Ed.2d 40 (1988); Conner v. Donnelly, 42 F.3d 220, 225 (4th Cir. 1994) ("If a physician treating a prisoner – whether by contract or referral – misuses his power by demonstrating deliberate indifference to the prisoner's serious medical needs, the prisoner suffers a deprivation under color of state law.") Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

24

A.      **No Evidence of Deliberate Indifference Regarding Pain Medications and Transfer to a Medical Facility.**

Plaintiff alleges that Defendants acted with deliberate indifference to his back pain by failing to transfer him to a medical facility where he can receive narcotic pain medication.[3] For purposes of considering Defendants' Motion, the undersigned will assume that Plaintiff's medical condition is serious enough to give rise to an Eighth Amendment claim. Plaintiff, however, cannot satisfy the subjective component. The Court finds that Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's back pain. The record reveals that Defendants evaluated Plaintiff and provided treatment following each sick-call request and chronic care visit. Defendants consistently evaluated Plaintiff's condition, ordered x-rays and an MRI, prescribed pain medications, increased dosages of the prescribed pain medications, and issued medical restrictions. Defendants further referred Plaintiff to an "outside" neurosurgeon, who gave Plaintiff facet injections. Plaintiff maintains that narcotic pain medication is necessary because the above treatment is inadequate to relieve his pain. Plaintiff alleges that Defendants are acting with deliberate indifference by failing to transfer him to a medical facility so that he can receive narcotic pain medication. Specifically, Plaintiff contends that Defendants are acting with deliberate indifference because the "outside" neurosurgeon recommended Plaintiff's transfer to a Level III medical facility. The record, however, reveals that Plaintiff acknowledged to Defendant McLain that the neurosurgeon made the above

---

[3] Plaintiff complains that FCI Beckley is unable to provide "pain medication strong enough to adequately address his pain to a manageable level so that he might also engage in some sort of therapy which would slow deterioration." (Document No. 1, p. 5.) Plaintiff acknowledges that Dr. Dominic McLain "prescribed Neurontin and Motrin to help ease the pain and told plaintiff that there were 12 inmates ahead of him awaiting transfer to a Medical Center for treatment." (*Id.*, p. 6.)

recommendation based upon Plaintiff's request.[4] Furthermore, FCI Beckley made a request for Plaintiff's transfer to a medical center on February 28, 2012, but Health Programs Chief, Dr. Allen, denied the transfer request and instructed FCI Beckley to continue local management of Plaintiff's condition. Thus, the record reveals that Defendants made sufficient efforts to treat Plaintiff's pain. At most, Defendants may have been negligent in prescribing appropriate medication for Plaintiff's pain. It is well recognized that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008); also see Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Finally, an inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). "[T]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." Malcomb v. Raja, 2010 WL 3812354, at * 1 - 2 (S.D.W.Va. Sept. 22, 2010)(quoting Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977)(finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one medication over another does not give rise to a constitutional violation.") Accordingly, the undersigned finds that Defendants did not act with deliberate indifference in

---

[4] Plaintiff contends that the neurosurgeon was going to prescribe narcotic pain medication, but Plaintiff explained he could not received narcotic pain medication at a Level II facility. Plaintiff, therefore, alleges that the neurosurgeon recommended a Level III facility. The record, however, contains no evidence that the neurosurgeon recommended or prescribed narcotic pain medication. The record reveals that the neurosurgeon failed to state any explanation as to why he recommended a Level III facility. (*See* Document No. 26-4, p. 75.)

providing medical treatment for Plaintiff's back pain and failing to transfer him to a medical facility.[5]

## B.     No Evidence of Deliberate Indifference Regarding Revocation of "Chair Pass."

Plaintiff contends that Defendants Snow and Ellis acted with deliberate indifference by revoking his "chair pass." Based upon a review of the record, Defendant Ellis provided Plaintiff with a "chair pass" on December 8, 2009, to assist him with access to his locker. On the same date Defendant Ellis also gave Plaintiff a restriction of no bending at the waist. Defendant Ellis issued the "chair pass" and no bending restriction based upon Plaintiff's subjective complaints of pain when bending at the waist. Subsequently, Defendant Snow reported to Health Services that Plaintiff was misusing his "chair pass" to lounge and read books. Health Services Administrative Kevin Thompson instructed Defendant Ellis to review the "chair pass" based upon Defendant Snow's complaint. Defendant Ellis reviewed Plaintiff's medical records and determined that the "chair pass" and restriction were not medically necessary. Defendant Ellis also determined the "chair pass" should be revoked due to Plaintiff's misuse of the chair. Specifically, Defendant Ellis determined that the restriction and "chair pass" were not medically necessary because Plaintiff's subsequent physical examinations indicated that Plaintiff's complaints of pain when bending at the waist were

_____

[5] The classification and transfer of federal prisoners falls within the broad discretion of the Bureau of Prisons, and a Court lacks authority to order that a prisoner be confined to any particular institution. *See* 18 U.S.C. § 3621(b)(the BOP shall designate the place of an inmate's confinement); *also see Meachum v. Farno*, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(the transfer of a convicted and sentenced inmate is within the sound discretion of the BOP); *United States v. Williams*, 65 F.3d 301, 307 (2nd Cir. 1995)("A sentencing court has no authority to order that a convicted defendant be confined in a particular facility, much less placed in a particular treatment program; those decisions are within the sole discretion of the Bureau of Prisons."); *Hinton v. Federal Bureau of Prisons*, 2009 WL 3347158, * 4 n. 5 (S.D.W.Va. Oct. 14, 2009)("Inmates . . . have no constitutional right to be housed in any particular prison or jail, regardless of security classification.").

exaggerated. Thus, there is no evidence that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety in revoking his "chair pass." According to the Declaration of Defendant Snow, cells are equipped with a stool or chair attached to the desk. (Document No. 26-6.) Plaintiff appears to merely disagree with Defendant Ellis' decision the chair was not medical necessary. As stated above, such a disagreement does not state a claim of deliberate indifference. The undersigned, therefore, finds that Defendants did not act with deliberate indifference in revoking Plaintiff's "chair pass."

**3.      Plaintiff's claims based upon a theory of respondeat superior.**

Plaintiff names the following supervisory officials as Defendants: (1) D.J. Harmon, former Acting Warden of FCI Beckley; and (2) Kevin Thompson, Health Services Administrator. Plaintiff appears to contend that Defendants Harmon and Thompson violated his constitutional rights by failing to ensure that he received proper medical treatment. (Document No. 1.) Specifically, Plaintiff contends that Warden Harmon acted with deliberate indifference "by failing to adequately address the issues of denial or interference by Mr. Snow of legitimate medical treatment to Mr. Cline's serious medical problems." (Id., p. 11.) Next, Plaintiff asserts that Defendant Thompson acted with deliberate indifference "by refusing to order the proper and effective treatment for Mr. Cline's serious medical problems when he knows that Mr. Cline suffers from chronic agonizing pain and should be at a medical center, and that his subordinates Ellis and McLain have refused to properly treat." (Id., p. 10.)

Defendants Harmon and Thompson contend that they are entitled to summary judgment because Plaintiff's claims against them are improperly raised under the doctrine of *respondeat superior*. (Document No. 27, pp. 14 - 16.) Defendants argue that "Defendant Harmon was not

responsible for making medical decisions concerning inmates at the facility; rather, he relied on medical staff to make medical decisions." (Id., p. 15.) Defendants contend that "Plaintiff makes no allegations against Defendant Thompson, but simply states he is responsible for the actions of his subordinates." (Id.) Defendants explain that "Defendant Thompson is responsible for the oversight of the Health Services Department, but he did not treat or make the treatment decisions concerning Plaintiff's care and his restrictions." (Id., pp. 15 - 16.) Defendants Harmon and Thompson argue that their supervisory position and the general notion that they are responsible for the actions of their subordinates is simply insufficient to form the basis of a claim for violations of a constitutional right, and they must be dismissed from this action. (Id.) In support, Defendant Harmon attaches a copy of his Declaration stating that "I was not personally involved in the medical decisions regarding the medical care of inmate Cline" and "I relied upon the judgment and training of medical staff to provide medical care for the inmates." (Document No. 26-8.) Defendant Thompson attaches a copy is his Declaration stating that his only conduct was that "I asked Nurse Practitioner Ellis, who was the primary care provider and who had issued inmate Cline the chair pass, to review the pass in light of [the report of misuse]." (Document No. 26-7.)

In Response, Plaintiff argues that "supervisory liability does not apply because the supervisor directly participated." (Document No. 31, p. 5.) Plaintiff asserts that "the supervisor learned of the violation of plaintiff's rights and failed to do anything to fix the situation." (Id.) Plaintiff contends that "the supervisor was grossly negligent in managing the people he was supposed to supervise." (Id.) Plaintiff explains that "D.J. Harmon was acting warden at the time in question when the issues of deliberate indifference to serious medical needs was first raised in the administrative remedy procedures." (Id.)

29

In Reply, Defendants Harmon and Thompson argue that Plaintiff has failed to demonstrate specifically how they were personally involved in violating any of Plaintiff's constitutional rights. (Document No. 37, p. 2.) Additionally, Defendants noted that Plaintiff admits that Warden Harmon's only involvement was reviewing plaintiff's administrative remedies, which as a matter of law is insufficient." (Id.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Ashcroft v. Iqbal, 129 S.Ct. at 1948("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Also see Monell v. Department of Social Services of the City of NY, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Liability, however, may attach to a supervisory official if "conduct directly causing the deprivation was done to effectuate an official policy or custom for which [the official] could be liable." Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by* County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Further, supervisory officials may be liable for acts of their subordinates where "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984). Thus, the inquiry for the Court is whether the Defendant individually "acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312, 1315 (4th Cir. 1991).

Defendants Harmon and Thompson argue that Plaintiff has failed to demonstrate specifically how they were personally involved in violating any of Plaintiff's constitutional rights. Essentially,

Plaintiff alleges that Defendants violated his constitutional rights with respect to their failure to supervise employees and in responding to his administrative remedies. The evidence of record reveals that Defendant Harmon responded to administrative remedy requests filed by Plaintiff. Plaintiff, however, has shown no other personal involvement by Defendant Harmon, and the record does not indicate any personal involvement by Defendant Thompson.[6] The dismissal of a non-medical defendant is appropriate where the defendant's sole involvement is the denial of an administrative remedy request. See Fellove v. Heady, 2008 WL 196420 *4 (N.D.W.Va. Jan. 22, 2008)(stating that "to the extent that the plaintiff may be asserting that these defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is also without merit as this is not the type of personal involvement required to state *Bivens* claim"); Mabry v. Ramirez, 2007 WL 4190398 *6 (N.D.W.Va. Nov. 21, 2007)(holding that "denying a prisoner's institutional grievance is not the type of personal involvement required to state a *Bivens* claim for deliberate indifference to serious medical needs"); Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003), aff'd, 70 Fed. Appx. 147 (4th Cir. 2003)(finding that the warden should be dismissed where the only claim against the warden concerned his dismissal of plaintiff's administrative remedy). In order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct. Lewis v. Angelone, 926 F. Supp. 69, 73 (W.D.Va. 1996). Non-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Miltier

---

[6] Defendant Thompson was not personally involved with the revoking of Plaintiff's "chair pass." The record reveals that Defendant Thompson relied on Defendant Ellis to determine Plaintiff's medical need for the chair pass. (Document Nos. 26-3, p. 60, 26-5, 26-7.)

v. Born, 896 F.2d 848, 854 - 55 (4th Cir. 1990). Finally, there is no evidence that Defendants Harmon

or Thompson were personally involved in a denial of treatment to Plaintiff, deliberately interfered

with Plaintiff's treatment, or tacitly authorized the prison physicians' conduct. Accordingly, Plaintiff

has improperly raised his claim against Defendants Harmon and Thompson under the doctrine of

*respondeat superior* and has failed to establish supervisory liability. The Court therefore finds that

Defendants Harmon and Thompson's Motion to Dismiss, or in the Alternative Motion for Summary

Judgment should be granted and Plaintiff's Motion for Summary Judgment should be denied. The

undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted

for dismissal.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED**

that the District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for

Summary Judgment" (Document No. 26.), **GRANT** the BOP's Motion to Dismiss" (Document No.

28.), **DENY** Plaintiff's Motion for Summary Judgment (Document No. 34.), **DISMISS** Plaintiff's

Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby

**FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days,

filing of objections and three days, mailing/service) from the date of filing of this Findings and

Recommendation within which to file with the Clerk of this Court specific written objections

identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: September 4, 2012.

R. Clarke VanDervort
United States Magistrate Judge