**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

PHILLIP CLINE

                Plaintiff,

v.                                    CIVIL ACTION NO.   5:11-cv-00870

D. J. HARMON, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Plaintiff's Complaint (Document 1), wherein the Plaintiff claims an entitlement to relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395-97 (1971), Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 26), the Memorandum of Law in Support of Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 27), the Federal Bureau of Prisons' Motion to Dismiss (Document 28), the Memorandum in Support of Federal Bureau of Prisons' Motion to Dismiss (Document 29), and Plaintiff's Motion for Summary Judgment (Document 34), together with all written submissions in support and in opposition.  By Standing Order (Document 2) entered on September 2, 2010, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636.

On September 4, 2012, the Magistrate Judge submitted his Proposed Findings and Recommendation ("PF&R"), (Document 50), wherein he recommended that the Court grant Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, grant the Bureau of Prisons' ("BOP") Motion to Dismiss, deny Plaintiff's Motion for Summary Judgment, dismiss Plaintiff's Complaint, and remove this matter from the Court's docket.   On September 18, 2012, Plaintiff timely filed his objections to the PF&R. (Document 51).   After thorough review and consideration, the Court finds, for the reasons stated herein, that Plaintiff's objections should be overruled and the Magistrate Judge's PF&R should be adopted.

## I.   PROCEDURAL HISTORY

Magistrate Judge VanDervort's PF&R sets forth in great detail Plaintiff's previous and current motions. The Court incorporates by reference the facts and procedural history contained in the PF&R.   To provide context for the ruling herein, the Court provides the following summary.

On November 10, 2011, Plaintiff, an inmate at FCI Beckley and acting *pro se,* filed his Complaint claiming entitlement to relief pursuant to *Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics.* (Document 1).   Plaintiff names the following as Defendants: (1) D.J. Harmon, Acting Warden; (2) Mike Snow, Unit Manager; (3) Mr. Thompson, Medical Director; (4) Dr. Dominic McLain; (5) James Ellis, Nurse Practitioner; and (6) the Federal Bureau of Prisons ("BOP"). (Document 1 at 4.)   Plaintiff alleges that Defendants acted and continued to act with deliberate indifference in providing his medical treatment for his prior "extensive injuries which include a pelvic shear fracture with pelvic tilt, fracture of right pubic rami and separation of sacroiliac joints, chronic lumbosacral strain, decreased sensory function of L5-S1 of right lower extremity, pronounced intervertebral disc syndrome with persistent symptoms compatible with

2

sciatic neuropathy, chronic pain, muscle spasms, and ankle jerk." (*Id*. at 4-5.)   Plaintiff explains that he is a "disabled veteran" who, for ten years, has "tried to be transferred to a medical center so that he may receive the proper care and treatment, specifically pain meds strong enough to adequately address his pain to a manageable level." (*Id*. at 4-5.)   Plaintiff contends that he has been "systematically denied at every level" even though his sentencing Judge recommended that he be placed at the Federal Medical Center ("FMC") Lexington facility because it is where he could receive proper care. (*Id*. at 5.)   Plaintiff argues that this "consistent pattern of reckless or negligent conduct is sufficient to establish [deliberate indifference] to serious medical needs in violation of the [Eighth] [A]mendment." (*Id*.)

Plaintiff contends that "FCI-Beckley <u>cannot</u> or <u>will not</u> provide the level of medical treatment that plaintiff needs." (*Id* at 6.)   Plaintiff also alleges that "[b]oth NP Ellis and Dr. McLain show 'deliberate indifference' to plaintiff's serious medical needs by failing to provide the level of medical treatment consistent to the extent of injuries, and pain and suffering experienced by plaintiff." (*Id*.)   Plaintiff asserts that Defendant Thompson is acting with deliberate indifference "by refusing to order the proper and effective treatment for [his] serious medical problems when [Defendant Thompson] knows that [he] suffers from chronic agonizing pain and should be at a medical center." (*Id*. at 10.) Plaintiff alleges that Defendant Snow acted with deliberate indifference in "willingly and wantonly interfere[ing] with [his medical] treatment to intentionally inflict pain by having [Plaintiff's] 'chair-in-cell' pass revoked."   (*Id*. at 7.)   Plaintiff contends the "chair-in-cell" is necessary "to facilitate access to his locker due to extreme pain and immobility associated with his serious medical condition." (*Id*.) Plaintiff alleges that Defendant Harmon acted with deliberate indifference "by failing to adequately address" Mr. Snow's

3

interference in his "legitimate medical treatment." (*Id.* at 10-11). He requests monetary and injunctive relief. (*Id.* at 13.)

On January 20, 2012, Plaintiff filed a Motion for Preliminary Injunction and Temporary Restraining Order, wherein Plaintiff argues that he "will continue to be inflicted with cruel and unusual punishment unless this court issues a preliminary injunction and temporary restraining order because the defendants [have], [are], and [w]ill continue to inflict continuous pain and suffering upon [him]." (Document 17).   On January 24, 2012, Magistrate Judge VanDervort submitted his PF&R (Document 18) wherein he recommended that the Court deny Plaintiff's motion and refer this matter back to him for further disposition.   On March 2, 2012, this Court adopted the Magistrate Judges' PF&R and denied Plaintiff's motion. (Document 21).

On March 19, 2012, Defendants filed their Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum in Support (Documents 26 and 27). Defendants argue that Plaintiff's Complaint should be dismissed because "(1) Plaintiff cannot establish a claim for deliberate indifference to his medical condition, (2) [r]evocation of Plaintiff's chair pass did not violate his constitutional rights, (3) [s]upervisory liability is inapplicable in a <u>Bivens</u> Action, (4) Defendants Harmon and Thompson must be dismissed for lack of specificity, (5) Defendants are entitled to qualified immunity, and (6) Defendant Ellis should be dismissed for insufficient service of process." (Document 26 at 1).

Also on March 19, 2012, the BOP filed a Motion to Dismiss and a Memorandum in Support (Documents 28 and 29).   Plaintiff contends that "the court lacks subject matter jurisdiction and the complaint fails to state a claim [for] relief." (Document 28 at 1).   In support of its Motion, the BOP asserts that "[t]he law does not provide for a <u>Bivens</u> remedy against the United

States nor its employees in their official capacities." (*Id.*)

On April 11, 2012, Plaintiff filed his Response to the BOP's Motion to Dismiss (Document 33). Plaintiff responds that he "is bringing this civil suit, 42 U.S.C. § 1983, against the BOP for an injunctive and a declaratory judgment, not monetary judgment, therefore, it should not be dismissed for the complaint and included as proper." (*Id.*)

Also on April 11, 2012, Plaintiff flied his Response to Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 31). First, Plaintiff argues that Defendant's denial of a "pain reliever strong enough to provide relief to plaintiff's extreme pain because it is not authorized by a care level II facility," and refusal to transfer Plaintiff to a care level III facility amounts to deliberate indifference. (*Id.* at 1-2). Second, Plaintiff asserts that Defendants Thompson, McLain, and Ellis have "deliberately disregarded that risk of serious harm to Plaintiff's serious medical needs" by "continuing a course of treatment that they knew to be ineffective and inadequate." (*Id.* at 2-3). Third, Plaintiff contends that "plaintiff's complaints are well beyond plaintiff's mere disagree[ments] with [the] BOP medical staff's '[s]ound [p]rofessional [j]udgment'" because "even Dr. Greenburg (Neurosurgeon Specialist) recommended that plaintiff be redesignated to care level III where he may receive the proper level of care." (*Id.* at 3). Fourth, Plaintiff argues that "Mr. Snow's intentional interference with the prescribed 'Chair Pass' after Mr. Ellis had provided chair pass to help facilitate access to locker amounts to deliberate indifference." (*Id.* at 4). Fifth, Plaintiff asserts that because Defendants Thompson and Ellis revoked the chair pass based upon Defendant Snow's report, they were "personally involved," and therefore, "supervisory liability does not apply." (*Id.* at 4-5). Finally, Plaintiff contends that Defendants are not entitled to qualified immunity because they "have

violated a 'clearly established' right….and were all personally involved in the decision making process." (*Id.* at 5).

Plaintiff also filed a Motion for Summary Judgment on April 11, 2012 (Document 34).   In support of his motion, Plaintiff states "[f]or the reasons stated in the Plaintiff's responses to Defendant's Motions, and the reasons stated in all Plaintiff's Affidavits submitted as Exhibits, the Plaintiff requests that the Defendants' Motion to Dismiss / Motion for Summary Judgment be denied and the Plaintiff respectfully requests that plaintiff's Motion for Summary Judgment be granted in whole or in part and the remaining issues deemed still in dispute to be heard before jury." (*Id.* at 1).

On April 13, 2012, the BOP filed its Reply (Document 35). The BOP argues that because of Plaintiff's judicial admission that he is "not seeking monetary damages against the BOP," any monetary relief against the BOP is now precluded. (*Id.*)   However, because "Plaintiff's request for injunctive relief was denied,…[a]ll that remains is the <u>Bivens</u> action which provides only for damages. (*Id.*) Therefore, the BOP argues that "Plaintiff does not have a <u>Bivens</u> action against the BOP." (*Id.*)

On April 16, 2012, Defendants filed their Reply (Document 37), wherein they argued that "[t]he affidavits referenced by plaintiff in his response are inadmissible and should be stricken." (*Id.* at 1). Specifically, Defendants contend that Plaintiff's affidavit is "hearsay, argumentative, and conclusory." (*Id.*).   Also, Defendants assert that Plaintiff's affidavit "fails to support any claim against Mr. Thompson" and fails to establish that Mr. Harmon had "any personal involvement with his medical care." (*Id.*).   Furthermore, Defendants claim that the affidavits "disagree with medical treatment," which is "insufficient to support plaintiff's <u>Bivens</u> claim." (*Id.*)

On April 16, 2012, Defendants filed a Response to Plaintiff's Motion for Summary Judgment (Document 38).  On April 27, 2012, Defendants filed their Corrected Response to Plaintiff's Motion for Summary Judgment (Document 45) wherein Defendants pray that this court "deny plaintiff's motion for summary judgment, grant their motion to strike affidavits, and grant their motion to dismiss or in the alternative for summary judgment." (*Id.* at 1-2).  Defendants argue that "[t]he motion should be denied because plaintiff failed to submit a memorandum" and "incorporate herein their previously filed motion to strike affidavits and …their motion to dismiss or in the alternative for summary judgment." (*Id.* at 1).

On April 19, 2012, Plaintiff filed his Corrected Response to the BOP's Motion to Dismiss (Document 39) wherein Plaintiff states that he "is bring this civil suit…against the BOP for an injunctive and a[] declaratory judgment, *not only monetary judgment*, therefore, it should not be dismissed from the complaint and included as proper." (*Id.* at 1).   In Plaintiff's Supplemental Response to Defendants' Motion to Dismiss (Document 40), filed on April 19, 2012, Plaintiff argues that the BOP improperly "bases its whole argument on the typographical error" and that his request for injunctive relief was not denied, but merely his "petition for preliminary injunction." (*Id.*)

On April 26, 2012, Plaintiff filed a Reply to Defendants Reponses to Plaintiff's Motion for Summary Judgment (Document 43). Plaintiff claims that he "was not aware that he had to submit a separate memorandum of law" in support of his Motion for Summary Judgment, and thus, now "supplants his response as memorandum of law in support of his motion for summary judgment." (*Id.*).

On September 4, 2012, Magistrate Judge VanDervort granted Defendants Motion to Strike

Affidavits, denied Plaintiff's Motion to Strike Declarations, (Document 49)[1] and submitted his Proposed Findings and Recommendation (Document 50). Then on September 18, 2012, Plaintiff timely filed his objections to the PF&R (Document 51) and his objections to the Magistrate Judge's order denying Plaintiff's Motion to Strike Declarations (Document 52).

## II.    RELEVANT HISTORY[2]

Magistrate Judge VanDervort's PF&R also sets forth in great detail Plaintiff's medical history, which the Court now incorporates by reference. However, to provide context for the ruling herein, the Court provides the following overview.

Since Plaintiff's transfer to FCI-Beckley in March 2009, Plaintiff has been regularly evaluated by Nurse Practitioner ("NP") Ellis and Dr. McLain, has received diagnostic testing to determine the etiology of his chronic pain, and received pain management treatment which has included adjusting pain medications and adding various restrictions and accommodations. (Documents 26-2, 26-3, 26-4). For example, on March 30, 2009, during an intake health screening upon his arrival to FCI-Beckley, due to his "adult onset hypertension and chronic back pain, … Plaintiff's medications were renewed and he was given a lower bunk pass due to previous back and pelvic injuries." (Document 26-2 at 1).

The records reflect that Plaintiff has been evaluated at least fifteen times,[3] since his arrival at FCI-Beckley, by a doctor, an outside neurosurgeon, a physician assistant, and a nurse

---

1 The Magistrate Judge found that Plaintiff's affidavit is argumentative, speculative and conclusory and that the affidavits of Curtis Thomas and Bernie King are irrelevant and contain conclusory statements. (Document 49 at 1) The Magistrate Judge also found that the declarations of Sarah Lilly and Defendants McLain, Ellis, Snow, Thompson and Harmon contain admissible evidence and information based upon personal knowledge (*Id.* at 2).

2 Plaintiff objects to some of the factual history in the Magistrate Judge's PF&R.

3 Plaintiff was evaluated on April 7, July 22, August 24, September 22, October 6, and December 8, 2009. Plaintiff

practitioner. (Documents 26-2, 26-3, 26-4).   Dr. McLain studied Plaintiff's x-rays and ordered labs (Document 26-2 at 1-2), NP Ellis requested an x-ray of Plaintiff's right knee in response to complaints of pain (Document 26-3 at 71), ordered an MRI of the lumbosacral spine (*Id.* at 58), and requested a consultation with a neurosurgeon for evaluation and consultation regarding Plaintiff's chronic low back pain. (*Id.* at 41, Document 26-4 at 42).   Furthermore, after the neurosurgeon, Dr. Jeffrey Greenberg, evaluated Plaintiff and recommended that Plaintiff undergo a lumbar facet injection, Plaintiff was given a set of injections in his L4/S1 and L5/S1. (Document 26-4 at 67-69).   When Plaintiff reported "he did not receive any relief from the pain injection in his back," NP Ellis evaluated Plaintiff and requested a follow-up visit with Dr. Greenberg "for management recommendations, as injections did not provide relief." (*Id.* at 71).

The record also reveals that during the follow-up appointment, Dr. Greenberg recommended that Plaintiff "go to a care level #3" noting that "[p]erhaps that might be of benefit" because "[t]here is nothing surgical that we can offer." (*Id.* at 75).   On March 9, 2012, Dr. McLain made an administrative note documenting his receipt of the neurosurgeon's report and recommendation that Plaintiff be "bumped up to a Care Level 3." (*Id.* at 76).   However, Dr. McLain also noted that "[t]he outside neurosurgeon does not understand our care level system" and that [d]uring the last clinic visit the patient stated to me he had requested the neurosurgeon to place that in his report hoping this would cause him to be transferred from this institution." (*Id.*).

Dr. McLain and NP Ellis have adjusted Plaintiff's pain medication and added new ones based on his feedback.   For example, on April 7, 2009, during a Chronic Care Visit, Plaintiff stated "Piroxicam did not help his pain much" but the "Ibuprofen worked better." (Document 26-2

<hr />

was also seen on January 5, April 1, June 22, September 21, and December 13, 2010. In 2011, Plaintiff was examined on May 13, underwent injections for pain on September 29, and was evaluated on October 31 and on November 2. Plaintiff was also evaluated on February 17, 2012.

at 1-2).   Therefore, Dr. McLain ordered Ibuprofen and discontinued the Piroxicam (*Id.* at 55). On October 6, 2009, Plaintiff reported that his pain was "slightly improved with Ibuprofen three times per day" but "requested something be added…to assist with his pain." (*Id.* at 38). Therefore, Dr. McLain continued Plaintiff's prescription for Doxepin and added Valproic Acid capsules to his pill line. (*Id.* at 40).   On February 17, 2012, Dr. McLain evaluated Plaintiff due to his continued complaints of chronic low back pain. (Document 26-4 at 77).   Plaintiff reported that Neurotin "helps very little" and requested narcotics and muscle relaxants. (*Id.*) Therefore, Dr. McLain increased his prescription for Neurontin. (*Id.* at 79).

Plaintiff has also received pain management treatment including the addition of various restrictions and accommodations. In addition to receiving a lower bunk pass upon his arrival at FCI-Beckley (Document 26-2 at 1), Plaintiff has been issued a medical idle, a can with a cane pass, (*Id.* at 45-47), a chair and a chair pass to "facilitate access to locker" (*Id.* at 32) and has been restricted from "bending at the waist on his work/duty restrictions" (*Id.*) all in response to medical evaluations and Plaintiff's complaints.

However, on May 25, 2010, NP Ellis noted that he had decided, based on a review of Plaintiff's medical records, "to revoke the cell chair pass [due to] misuse of authorized medical equipment." (Document 26-3 at 60). In the administrative note, NP Ellis writes that "[i]nmate w[ith] chronic lower back pain was initially given cell chair pass to facilitate access to his locker" but "[i]t was reported by unit team members through Mr. Thompson, that the inmate was using the cell chair to read books and lounge." (*Id.*).

The record also reveals that on February 28, 2012, FCI Beckley requested Plaintiff be transferred to a Medical Referral Center (Document 26-4 at 82).   However, this request was

10

denied on March 2, 2012, and FCI Beckley was told to "[c]ontinue local management of condition." (*Id.*)

## III.      STANDARD OF REVIEW

This Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.   *Thomas v. Arn*, 474 U.S. 140, 150 (1985).   In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).   When reviewing portions of the PF&R de novo, the Court will consider the fact that Plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction.   *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir.1978).

## IV.     APPLICABLE LAW

### A.   Motion to Dismiss

In addressing a motion to dismiss, a court may consider a plaintiff's factual allegations made in the complaint, any exhibits attached thereto, documents attached to the motion to dismiss that are authentic and integral to the complaint, and any matters of public record of which the court may take judicial notice. *Lee v. City of S. Charleston*, 2009 WL 2602378 *2 (S.D. W. Va. Aug. 21, 2009) (citing *Blankenship v. Manchin,* 471 F.3d 523, 526 n. 1 (4th Cir. 2006) (matters attached to motion to dismiss that are authentic and integral); *Hall v. Virginia,* 385 F.3d 421, 424 (4th Cir.

11

2004) (public records); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §1364.)) "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If a court chooses to convert a motion to dismiss to a motion for summary judgment, the parties must be given a reasonable opportunity to present all materials that are pertinent to the motion. *Id.*

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a plaintiff must provide a "short and plain statement of the claim showing . . . entitle[ment] to relief," and is not required to plead specific facts in the complaint. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted); *see also Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 129 S.Ct. at 1950.

### B. Motion for Summary Judgment

The well established standard for consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). In other words, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [while] [f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Id.* The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick Cty. Comm'r,* 945 F.2d 716, 718–19 (4th Cir. 1991). In other words, the non-moving party must satisfy its burden of proof by offering more than a mere "scintilla of evidence" in support of their position.

13

*Anderson*, 477 U.S. at 252.   The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Id.* at 256.   If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.   The parties must support their factual assertions by citing to particular materials in the record, including documents, affidavits, and declarations. Fed.R.Civ.P. 56(c)(1)(A). Where a party fails to either support an assertion of fact or address another party's assertion of fact, the trial court may, *inter alia,* consider any unsupported or unaddressed facts undisputed and grant summary judgment if the motion, its supporting materials, and the undisputed facts show the movant is entitled to relief. Fed.R.Civ.P. 56(e).   If factual issues exist that can only be resolved by a trier of fact because the issues may reasonably be resolved in favor of either party, summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.

## V.     DISCUSSION

### A.   The Magistrate's Judge's Findings

#### (1) The Bureau of Prisons' Motion to Dismiss Must be Granted

The Magistrate Judge found that the BOP's motion to dismiss should be granted. (Document 50 at 22).   In its motion, "the BOP argues that Plaintiff's <u>Bivens</u> action should be dismissed for failure to state a claim upon which relief can be granted and lack of subject matter jurisdiction." (*Id.* at 20).   *"Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green,* 446 U.S. 14, 18-19 (1980).

14

The Magistrate Judge noted, in *FDIC v. Meyers,* the United States Supreme Court found that "<u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities." (*Id.* at 21).   In other words, under *Bivens,* "[f]ederal inmates …may not assert claims against the government or prison officials in their official capacities." (*Id.*).   The Magistrate Judge properly found that because the BOP is a federal agency and "federal agencies are not proper defendants under <u>Bivens,</u>" the BOP's motion to dismiss should be granted. (Document 50 at 21).   Furthermore, the Magistrate Judge noted that because "<u>Bivens </u>claims are not actionable against defendants acting in their official capacities," Plaintiff's <u>Bivens </u>action against the BOP's employees in their official capacity should also be dismissed. (*Id.* at 21-22).

**(2) Plaintiff's Eighth Amendment Claim Should be Dismissed**

The Magistrate Judge found that Plaintiff has failed to establish a violation of the Eighth Amendment.   The Magistrate Judge correctly determined that sentenced prisoners are guaranteed "adequate medical care" under the Eighth Amendment. (Document 50 at 22) (*see Farmer v. Brennan,* 511 U.S. 825, 832 (1970)).   The Magistrate Judge also correctly considered the applicable law regarding violations of the Eighth Amendment based on a challenge to conditions of confinement.   "To establish a violation… an inmate must allege and prove (1) a 'sufficiently serious' deprivation under an objective standard and (2) that prison officials acted with 'deliberate indifference' to the inmate's health and safety under a subjective standard." (Document 50 at 22) (citing *Wilson v. Seiter,* 501 U.S. 294, 297-99 (1991).   In other words, [i]n order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious' and that 'subjectively the

15

officials act[ed] with a sufficiently culpable state of mind." *Shakka v. Smith,* 71 F.3d 162, 166 (4th Cir. 1995) (*quoting Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)).

In addition, the Magistrate Judge properly stated the legal framework governing Eighth Amendment violations with regard to health care.   The Fourth Circuit Court of Appeals has made clear that "[t]o establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn,* 896 F.2d 848, 851-52 (4th Cir. 1990).   "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. (*Id.*).   Furthermore, "[a] defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (*Id.*).   The Magistrate Judge noted that most importantly, "mere negligence or malpractice does not violate the eighth amendment." (*Id.*)   To maintain and prevail on an Eighth Amendment claim, the Magistrate Judge explained that Plaintiff must "allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences." (Document 50 at 24).

### Pain Medications and Transfer to a Medical Facility

The Magistrate Judge found that "Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's back pain and failing to transfer him to a medical facility." (*Id.* at 26-27).   The Magistrate Judge assumed that Plaintiff's medical condition was serious enough to give rise to an Eighth Amendment claim, satisfying the objective element. (*Id.* at 25).   However, turning to the subjective prong of the test, the Magistrate Judge found that

16

"Defendants did not act with deliberate indifference in providing medical treatment for Plaintiff's back pain." (*Id.*).   The Magistrate Judge noted that "[t]he record reveals that Defendants evaluated Plaintiff and provided treatment following each sick-call request…consistently evaluated Plaintiff's condition, ordered x-rays and an MRI, prescribed pain medication, increased dosages of the prescribed pain medications,…issued medical restriction" and "referred Plaintiff to an 'outside' neurosurgeon, who gave Plaintiff facet injections." (*Id.*).

Plaintiff argues that Defendants are acting with deliberate indifference because the above treatment is inadequate to relieve his pain and Defendants failed to transfer him to a medical facility where he could receive narcotic pain medication. (*Id.*).   Plaintiff relies on the "outside" neurosurgeon's recommendation that Plaintiff be transferred to a Level III medical facility to support his claim. (*Id.*).   However, the Magistrate Judge noted that "the record…reveals that Plaintiff acknowledged to Defendant McLain that the neurosurgeon made the above recommendation based upon Plaintiff's request." (*Id.* at 26).   The Magistrate Judge also noted that "FCI Beckley made a request for Plaintiff's transfer to a medical center on February 28, 2012, but Health Programs Chief, Dr. Allen, denied the transfer request and instructed FCI Beckley to continue local management of Plaintiff's condition." (*Id.*).

The Magistrate Judge cites Fourth Circuit precedent in finding that Defendants did not act with deliberate indifference.   "The Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." *Malcomb v. Raja*, 2010 WL 3812354 at *1-2 (S.D.W.Va. Sept. 22, 2010) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977) (finding that plaintiff was provided medication for his pain and "Defendants' decision to provide plaintiff with one

17

medication over another does not give rise to a constitutional violation.").   In other words, the Magistrate Judge explains that"[a]n inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim." (Document 50 at 26) (*citing Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Based on the many evaluations, MRI and x-rays, neurosurgeon consultations, pain medications, medical restrictions, and transfer request, the Magistrate Judge found that "the record reveals that Defendants made sufficient efforts to treat Plaintiff's pain… [and] [a]t most, Defendants may have been negligent in prescribing appropriate medication for Plaintiff's pain." (Document 50 at 26).   However, the Magistrate Judge correctly notes that "negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference." (*Id.*) (citing *Webb v. Hamidullah,* 281 F.App'x 159, 166 (4th Cir. 2008)).   Therefore, the Magistrate Judge found that Plaintiff had not established an Eighth Amendment violation with respect to Defendants' provision of medical treatment for Plaintiff's back pain or for failing to transfer Plaintiff to a medical facility.

### Revocation of "Chair Pass"

The Magistrate Judge found that "Defendants did not act with deliberate indifference in revoking Plaintiff's 'chair pass.'" (Document 50 at 28).   In reviewing the record, the Magistrate Judge noted that on December 8, 2009, based on Plaintiff's complaints of pain when bending at the waist, Defendant Ellis issued Plaintiff a restriction of no bending at the waist and gave him a "chair pass" to help him access his locker. (*Id.* at 27).   After Defendant Snow reported that Plaintiff was misusing his "chair pass" to lounge and read books, Health Services instructed Defendant Ellis to

18

review the "chair pass." (*Id.*).   Upon review of Plaintiff's medical records and Plaintiff's subsequent physical examinations, Defendant Ellis determined that the restriction and "chair pass" were not medically necessary because Plaintiff's complaints of pain when bending at the waist were exaggerated, and therefore, should be revoked. (*Id.* at 27-28). The Magistrate Judge also noted that "[a]ccording to the Declaration of Defendant Snow, cells are equipped with a stool or chair attached to the desk." (*Id.* at 28) (citing Document 26-6). "Plaintiff appears to merely disagree with Defendant Ellis' decision [that] the chair was not medically necessary." The Magistrate Judge noted that such a disagreement does not amount to deliberate indifference, and therefore, found that Defendants did not act with deliberate indifference in revoking Plaintiff's chair pass.

**(3) Plaintiff's Claim Based on Respondeat Superior Should be Dismissed**

The Magistrate Judge found that "Plaintiff has improperly raised his claim against Defendants Harmon and Thompson under the doctrine of *respondeat superior* and has failed to establish supervisory liability." (Document 50 at 32).   Plaintiff names D.J. Harmon, former Acting Warden of FCI Beckley, as a defendant arguing that he acted with deliberate indifference "by failing to adequately address the issues of denial or interference by Mr. Snow of legitimate medical treatment to [Plaintiff's] serious medical problems." (Document 1 at 11).   Plaintiff also names Kevin Thompson, Health Services Administrator, as a defendant asserting that he acted with deliberate indifference "by refusing to order the proper and effective treatment for [Plaintiff's] serious medical problems when he knows that [Plaintiff] suffers from chronic agonizing pain and should be at a medical center, and that his subordinates Ellis and McLain have refused to properly treat." (*Id.* at 10).

19

Defendants, however, argue that they are entitled to summary judgment because they held supervisory positions. (Document 27 at 14-16). Specifically, Defendants argue that "Defendant Harmon was not responsible for making medical decisions concerning inmates at the facility" and "Defendant Thompson is responsible for the oversight of the Health Services Department, but he did not treat or make the treatment decisions concerning Plaintiff's care and his restrictions." (*Id.* at 15-16). In his response, Plaintiff argues that "the supervisor learned of the violations of plaintiff's rights and failed to do anything to fix the situation." (Document 31 at 5).   In their reply, Defendants contend that Plaintiff has failed to demonstrate how they were personally involved in violating any of Plaintiff's constitutional rights. (Document 37 at 2).

The Magistrate Judge explained that vicarious liability is inapplicable to a *Bivens* suit, and therefore, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." (Document 50 at 30) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. at 1984).   However, the Magistrate Judge noted that "supervisory officials may be liable for acts of their subordinates where 'supervisory indifference or tacit authorization of subordinates' misconduct may be a causative fact in the constitutional injuries they inflict on those committed to their care." (Document 50 at 30) (*quoting Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).   Therefore, the Magistrate Judge explained that, "the inquiry for the Court is whether the Defendant individually 'acted wantonly, obdurately, or with deliberate indifference to the pervasive risk of harm.'" (Document 50 at 30) (*quoting Moore v. Winebrenner,* 927 F.2d 1312, 1315 (4th Cir. 1991).

The Magistrate Judge correctly determined that "[i]n order to succeed on a medical claim against non-medical personnel, plaintiff must establish that non-medical personnel were

20

personally involved in a denial of treatment, deliberately interfered with treatment, or tacitly authorized or were indifferent to a prison physician's conduct." (Document 50 at 31) (*citing Lewis v. Angelone*, 926 F.Supp. 69, 73 (W.D.Va. 1996).   The Magistrate Judge found that "there is no evidence that Defendants Harmon or Thompson were personally involved in a denial of treatment to Plaintiff, deliberately interfered with Plaintiff's treatment, or tacitly authorized the prison physician's conduct." (Document 50 at 32).   Furthermore, "[t]he evidence of record reveals that Defendant Harmon responded to administrative remedy requests filed by Plaintiff… Plaintiff, however, has shown no other personal involvement by Defendant Harmon, and the record does not indicate any personal involvement by Defendant Thompson." (*Id.* at 31).   The Magistrate Judge explains that "dismissal of a non-medical defendant is appropriate where the defendant's sole involvement is the denial of an administrative remedy request." (Document 50 at 31). Furthermore, "[n]on-medical prison personnel may rely on the opinion of the medical staff as to the proper course of treatment." (Document 50 at 31) (*citing Miltier v. Born,* 896 F.2d 848, 854-55 (4th Cir. 1990).   Therefore, the Magistrate Judge concluded that Defendants Harmon and Thompson's Motion to Dismiss, or in the Alternative Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment should be denied.

### B.   Plaintiff's Objections and the Court's Findings

Plaintiff lists fourteen objections to the Magistrate Judge's PF&R. (Document 51).   A number of Plaintiff's objections relate not to the Magistrate Judge's legal findings, but to the facts in the record cited to in the PF&R.   Plaintiff argues "summary judgment as to the defendants should be denied as the material facts are in dispute." (Document 51 at 4).   However, the facts to which Plaintiff objects are immaterial, and therefore, dispute as to those facts, would not affect

21

summary judgment.   "An otherwise properly supported motion for summary judgment will not be defeated by the existence of some factual dispute; rather, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment" *Hill v. O'Brien,* 387 F.App'x 396, 400 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As a result, objections 1, 2, 4, 5, and 9 should be overruled. Furthermore, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-moving party's] case." *Thompson v. Potomac Elec. Power Co*., 312 F.3d 645, 649 (4th Cir. 2002) (citation omitted). Therefore, objections 6, 10, and 12 should be overruled.

As previously stated, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."   *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). As a result, objections 11 and 13 should be overruled.

1.   Plaintiff objects to the Magistrate Judge's statement "Plaintiff's transfer paperwork noted that the Plaintiff had a history of noncompliance with medical treatment." (Document 51 at 1).   Plaintiff argues that the statement is "inaccurate because what the plaintiff refused to take was a psychotrophic medication erroneously given for pain as the doctors thought pain was imaginary, plaintiff's pain was all too real. And this was an isolated incident" (*Id.*).   Any factual dispute, here, is immaterial, and therefore, Plaintiff's objection based thereon should be overruled.

2.   Plaintiff objects to the Magistrate Judge's reference to an administrative note indicating that Plaintiff was a "no show for hospital labs" by arguing that "plaintiff never knew when to show up for labs." (*Id.*)   Again, this factual dispute is immaterial, and thus, Plaintiff's

22

objection should be overruled.

3.   Plaintiff seems to object to pages 10 through 16 of the PF&R arguing that "the alledged (sic) 'factual History' which the magistrate judge pulls upon is in fact NOT an actual official Medical history report issued by the BOP, instead of pulling information directly from the plaintiff's BOP medical history he relies upon secondary information which does not adequately reflect the correct medical history of plaintiff and severely prejudices the plaintiff because it is these very facts which are in dispute." (Document 51 at 1).   Plaintiff's objection should be overruled because it is factually incorrect. The Magistrate Judge did rely on a redacted copy of Plaintiff's BOP medical records which is attached as Exhibit 2, Attachment A, to Defendants' Motion to Dismiss or in the Alternative, Motion for Summary Judgment. (*See* Document 26-2 at 12-74, Document 26-3, and Document 26-4).

4.   Plaintiff seems to object to the Magistrate Judge's exclusion of part of Dr. Greenberg's recommendation. (*Id.* at 2). Plaintiff claims that "[t]he magistrate judge left this section out [dealing with Plaintiff's medical history] in an attempt to negate the extreme seriousness of plaintiff's injuries." (*Id.*) Plaintiff's objection should be overruled because the excluded section is immaterial, especially since the Magistrate Judge assumed that "Plaintiff's medical condition is serious enough to give rise to an Eighth Amendment claim," and thus, would not affect summary judgment. (Document 50 at 25).

5.   Plaintiff objects to Dr. McLain's statement that Plaintiff had confessed to requesting that the neurosurgeon recommend a transfer to a Care Level III facility hoping that would cause him to be transferred. (*Id.*).   Plaintiff states "this is inaccurate as the plaintiff never stated anything to that nature." (*Id.* at 2).   Again, Plaintiff's objection should be overruled because it is

23

immaterial.   Assuming the existence of a factual dispute with respect to this issue would not affect the outcome of the case, and therefore, is not sufficient to defeat summary judgment. Furthermore, the fact that Defendants consulted an outside neurosurgeon undermines any contention that the treatment, even if incorrect, was deliberate or indifferent. *See, Webb v. Hamidullah,* 281 F.App'x 159, 166 (4th Cir. 2008).

6.   Plaintiff objects to the Magistrate Judge's statement that "FCI-Beckley requested Plaintiff's transfer to a Medical Referral Center" because "what was neglected to be included in the magistrate's 'factual history' was that on the request for the plaintiff to be transferred to a medical facility there was an intentional blimp in question: [i]s required treatment available in local community? FCI-Beckley replied, 'yes' which completed voided such request." (Document 51 at 3).   Plaintiff's assertion that FCI-Beckley's affirmative answer "completely voided such request" is not supported by any evidence in the record.   Rather it is pure speculation.   Therefore, Plaintiff's objection should be overruled because "speculative allegations do not suffice" to defeat entry of summary judgment. *Thompson* 312 F.3d at 649.

7.   Plaintiff also objects to the Magistrate Judge's finding that "Bivens claims are not actionable against the United States, Federal agencies, or public officials acting in their official capacities.   Plaintiff "objects under the authority of the "Monell Claim" <u>Monell v. Dept. of Social Services of the City of New York, 436 US 659 (1978)</u> and <u>Pembaur v. Cincinnati, 475 US 469 (1986)</u> which states that a plaintiff may sue any agency and it's employees in their official capacities for an injunction and/or damages where the violation of plaintiff's rights was the product of a policy or custom of that agency." (Document 51 at 3).   In support of his objection, Plaintiff states that "BOP and it's employees are guilty of a pattern of abuse that results in

24

violations of a multitude of inmate's rights, chiefly the deliberate indifference to the serious medical needs and the failure to effectively treat those serious medical needs which have resulted in several deaths here at FCI-Beckley in the last several years alone." (*Id.*).   Plaintiff states that "[u]pon discovery and precedence to trial plaintiff can show and prove a claim upon which relief may be granted." (*Id.*).   Plaintiff's objection should be overruled because it is legally incorrect as it relates to a *Bivens* cause of action.   *Monell* held that local governments may be sued under the Civil Rights Act of 1871, now codified as 42 U.S.C. § 1983, "when execution of a government's policy or custom… inflicts the injury that the government as an entity is responsible [for] under § 1983." *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978) ("[W]e express no views on the scope of any municipal immunity beyond holding that the municipal bodies sued under § 1983 cannot be entitled to an absolute immunity...") *Id.* at 701.   Furthermore, Plaintiff's allegations are purely speculative.   They are not supported by any evidence in the record.   Lastly, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to provide a "short and plain statement of the claim showing . . . entitle[ment] to relief" in his complaint, not at trial. *See* Fed. R. Civ. P. 8(a)(2).

8.   Plaintiff objects to the Magistrate Judge's finding that he has not satisfied the subjective component.   Plaintiff contends that "[b]y the named defendants continuing to attempt to treat plaintiff's serious medical needs with a course of treatment that they were bound by and that they knew were inadequate and ineffective satisfies the 'Subjective Component' and by… refusing to refer transfer to medical facility which could treat properly under level III formulary, by stating they could treat locally when defendants knew that was not possible under level II formulary also satisfies the subjective component." (Document 51 at 4).   Plaintiff's objection

should be overruled because the Magistrate Judge correctly found that, "an inmate's disagreement with his medical care for an objectively serious medical injury generally will not constitute a sufficient basis for a constitutional claim." Also, "the mere fact a prisoner may believe…he required better treatment does not establish a constitutional violation" *Starling v. United States*, 664 F.Supp.2d 558, 569 (2009) (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975)). Furthermore, "the fact that defendants' treatment of plaintiff was not effective does not give rise to a constitutional violation." *Barefoot v. Derry,* 2012 WL 1015919 at *8-9 (E.D.N.C. March 23, 2012) (citing *Russell,* 528 F.2d at 319).

9.  Plaintiff objects to the Magistrate Judge's statement that "[t]he record, however, reveals that Plaintiff acknowledged to Defendant McLain that the neurosurgeon made the above recommendation [for transfer a level III facility] based upon Plaintiff's request." (Document 50 at 25-26). Plaintiff contends that this is a "fabrication" and that "upon discovery it will be proved that the record upon which the magistrate judge relies upon as "record" is in fact perjury." (Document 51 at 4-5).  Plaintiff's objection should be overruled because this "factual dispute" is immaterial. In other words, this dispute would not impact the outcome of the case, and therefore, cannot defeat summary judgment.

10.  Plaintiff reiterates his objection to the Magistrate Judge's reliance on the fact that FCI-Beckley made a request for plaintiff's transfer to a medical center claiming that it is irrelevant because "defendants knew [the] request would be denied." (*Id.* at 5).  Furthermore, Plaintiff argues that "Defendants also knew that they did not have the ability to treat locally as the level II formulary prevented plaintiff from receiving the proper treatment and that only a level III formulary would effectively allow for proper treatment to plaintiff's serious medical condition."

26

(*Id.*).  Plaintiff's objection should be overruled because this "speculative allegation[]" do[es] not suffice" to preclude the entry of summary judgment. *Thompson* 312 F.3d at 649.  Furthermore, as previously stated, "the mere fact a prisoner may believe…he required better treatment does not establish a constitutional violation" *Starling* 664 F.Supp.2d at 569 (citing *Russell* 528 F.2d at 319).

11.  Plaintiff does not appear to object to the Magistrate Judge's determination that "negligent medical diagnosis or treatment, without more, does not constitute deliberate indifference" but "would like to point out that continued and repeated acts of negligence is sufficient to establish deliberate indifference to serious medical needs." (*Id.* at 5).  Plaintiff's "objection" should be overruled because it is general in nature, and does "not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).  Furthermore, the record is void of any evidence of "continued and repeated acts of negligence."

12.  Plaintiff objects to the Magistrate Judge's finding that "Plaintiff appears to merely disagree with Defendant Ellis' decision [that] the chair was not medical[ly] necessary." (Document 51 at 6) (citing Document 50 at 28).  Plaintiff claims that "Snow intentionally interfered with plaintiff's medical treatments by making false accusations to medical staff, somehow the focus was shifted from Snow to Ellis." (Document 51 at 6).  Plaintiff contends that "Snow made the false report to medical knowing full well that he had the power and influence (as he was Unit Manager) to get medical staff to do his bidding." (*Id.*)  Plaintiff claims that "Snow did this simply because he didn't want any chairs in the cells." (*Id.*)  In addition, Plaintiff contends that "the stools attached to the desks are 6ft. away from the lockers, no way helping plaintiff to access his locker…Snow knew the risks to plaintiff's medial condition but yet disregarded that risk

when he took it upon himself to interfere with plaintiff's medical treatment by influencing medical staff to comply with his wishes." (*Id.*)   Plaintiff's claim regarding Mr. Snow's motive in making his report is pure speculation. Likewise, Plaintiff's assertion concerning Mr. Snow's knowledge and state of mind is simply conjecture. There is no evidence in the record to support Plaintiff's claims.  Moreover, no reasonable inference can be drawn from the evidence in the record to support his claims. Therefore, again, Plaintiff's objection should be overruled because a "speculative allegation[]" do[es] not suffice" to preclude the entry of summary judgment. *Thompson* 312 F.3d at 649.

13. Plaintiff objects to the Defendants' statements in their Memorandum of Law in Support of Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document 51 at 6, Document 50 at 28-29). In his PF&R, the Magistrate Judge quotes from Defendants' Memorandum of Law in Support to give context to his findings. (Document 50 at 28-29).  Plaintiff objects to these allegations, not to any factual or legal conclusion of the Magistrate Judge.   Thus, the Court is not required to review these objections. *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

14. Plaintiff objects to the Magistrate Judge's finding that there is "no evidence that defendant Harmon or Thompson were personally involved in a denial of treatment to plaintiff…and that plaintiff has improperly raised his claim against defendants Harmon and Thompson under the doctrine of respondeat superior." (*Id.* at 7).  Plaintiff argues that "there is evidence that Thompson knew that plaintiff's medical needs were not being properly treated and failed to ensure that plaintiff received the needed treatment and that, again, Thompson directly participated in denial of chair pass which had been issued as part of treatment."   However, as the

28

Magistrate Judge found, the record reveals that "Defendant Thompson was not personally involved with the revoking of Plaintiff's 'chair pass'" and that he "relied on Defendant Ellis to determine Plaintiff's medical need for the chair pass." (Document 50 at 31) (citing Documents 26-3 at 60, 26-5, 26-7). Furthermore, as the Magistrate Judge noted, "[t]he dismissal of a non-medical defendant is appropriate where the defendant's sole involvement is the denial of an administrative remedy request." (Document 50 at 31) (*citing Fellove v. Heady,* 2008 WL 196420 *4 (N.D.W.Va Jan. 22, 2008). Plaintiff's objection, which appears to misconstrue the Magistrate Judge's findings, should be overruled because Plaintiff does not provide any evidence to support his claim.

## VI.   CONCLUSION

Based on the findings herein, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document 50) be **ADOPTED** and that Plaintiff's objections to the PF&R (Document 51) be **OVERRULED**.   Furthermore, the Court **ORDERS** that the BOP's Motion to Dismiss (Document 28) be **GRANTED,** Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document 26) be **GRANTED**, Plaintiff's Motion for Summary Judgment (Document 34) be **DENIED**, Plaintiff's Complaint (Document 1) be **DISMISSED,** and that this matter be **STRICKEN** from the docket of this Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    December 18, 2012

*Irene C. Berger*

UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

29